HENRY M. GRAY v. ST. PAUL CITY RAILWAY COMPANY.[1]

October 31, 1902.

Nos. 13,101—(50).

### Street-Railway Crossing—Giving Signals.

Where street-railway tracks occupy a street at the foot of an incline which, in conjunction with other streets, forms a system of crossings in a populous part of the city, it is the duty of the motorman in charge of a car coming down the grade to keep a lookout for young children approaching the crossings or standing near the tracks, and to take reasonable precaution to prevent injury to them, by sounding the gong, checking the speed of the train, and holding it under control.

### City Ordinance—Stopping Car.

A certain ordinance reads as follows: "No person having the control of the speed of a street-railway car passing in a street shall, on the appearance of * * * any obstruction to his car, fail to stop the car

1 Reported in 91 N. W. 1106.

in the shortest time and space possible." *Held*, this ordinance is not unreasonable, in that it requires the stopping of the car without regard to the safety of the train and the persons therein. It is no more than a declaration of the law, and only requires the person in charge of the car, upon the appearance of an obstruction, to stop the car as soon as possible under the circumstances, with due regard for the safety of the passengers.

## Assignments of Error.

Other assignments of error considered, and *held* to be not well taken.

Action in the district court for Ramsey county by plaintiff, as administrator of the estate of Charles H. Gray, deceased, to recover $5,000 for the death of decedent. The case was tried before Kelly, J., and a jury, which rendered a verdict in favor of plaintiff for $2,750. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Munn & Thygeson*, for appellant.

*Charles N. Dohs* and *S. P. Crosby*, for respondent.

LEWIS, J.

At the foot of Oakland avenue, in the city of St. Paul, Ramsey street, Oakland avenue, Pleasant avenue, and Garfield street cross each other; and Oakland avenue runs up a steep incline, on a grade of 3.66 feet per 100, and is occupied by defendant's street railway system, consisting of double tracks, and at the foot of the grade the tracks turn upon a curve in Ramsey street. The crossings are in a populous part of the city, and in frequent use. On January 19, 1901, at about three o'clock in the afternoon, Charles H. Gray, an infant, five years and nine months of age, was struck by one of defendant's cars at or near the crossing on the south side of Ramsey street at its intersection with Garfield street, and received injuries from which he died. This action is brought by the administrator to recover damages for the boy's death. At the trial below, plaintiff recovered a verdict of $2,750. Defendant appealed.

First. Was there any evidence reasonably tending to show that defendant was guilty of negligence? Second. Was error committed by the court in giving certain instructions to the jury?

Third. Was a certain ordinance of the city admissible in evidence?
Fourth. Did the court err in permitting testimony to be received
as to the distance the car ran after the accident?

1. The charge of negligence against the defendant is as follows:
The deceased, in company with a little girl about nine years of age,
had left his home, on the north side of Ramsey street, in order to
go to a store on the other side of the street car tracks; and as the
children approached the tracks the motorman of the car coming
down the Oakland avenue grade could have seen the children, and
should have anticipated that they would either attempt to cross
the tracks ahead of the car, or that they would be in such close
proximity as to be in danger, and that under such circumstances
it was the duty of the motorman to have had his car under con-
trol, and checked its speed. That the car came down the hill at
a rapid rate, and crossed Garfield street without giving any signal,
and in consequence the boy was struck.

According to the testimony of the little girl, Eleanor Lynch,
she and the little boy came down the sidewalk on the north side
of Oakland avenue, skipping along until they reached the curb, and
then, hand in hand, walked towards the car tracks to cross the
street. That she saw a west-bound car going up the hill, and that
they walked on until they came upon the north track, and reached
that point just as the fender of the front car of the east-bound
train passed them, and she told the little boy to look out for the
car; but he, excited over a runaway which had occurred on Ramsey
street, pulled his hand away from her and ran towards the passing
train, and was struck by the platform of the second car. Another
witness, who was in the front car of the train, testified that as
the car approached the crossing she looked out over her shoulder,
and noticed the children running in the street towards the car,
and that they stopped on the north track just as she passed them.

Several witnesses testified to the speed at which the car was
running; some saying it was running rapidly; one stating that it
was going as fast as a horse would ordinarily trot; and several
witnesses testified that they heard no gong ring at that crossing,
although they were in positions to hear it. Witnesses testified
that the car did not stop at Garfield street, but finally stopped

at a distance of from one hundred twenty to one hundred sixty feet east of the place where the boy was struck. Other witnesses testified that the car stopped at Garfield street to take on a passenger, and that it was running slowly when it struck the boy.

The vision of the motorman as the car came down the incline was unobstructed, and the children might have been seen, not only as they walked along Oakland avenue, but as they approached the tracks upon the crossing. The motorman testified that he saw some children upon the north side of Oakland avenue, as he was going down the grade, but that he did not look to the left as he approached the crossing, and did not know whether the children he saw were this little boy and girl.

In view of this testimony, we think it was a question of fact for the jury to pass upon, whether or not, under the circumstances, the persons in charge of the car were in the exercise of such care as should be exercised at a crossing of that character under such circumstances. If it was true that the train came down the grade at a rapid rate, and crossed Garfield avenue without giving any signals or slowing up, and the motorman did not look to see whether any persons were approaching the crossing at that point, then we think the jury were justified in holding the defendant guilty of negligence. In the decision of this case we assume that there was no contributory negligence on the part of deceased, or the little girl in charge of him, or of the parents. The boy was non sui juris, and that question is eliminated by concessions of defendant. It can make no difference that the front part of the car had passed the children, and that the boy came in contact with the second part or rear of the train, for the evidence tended to show that they were either standing in close proximity to the cars at the time the motorman passed them, or that they were approaching them with the intent of crossing the track, either upon a walk or running. It was for the jury to say whether it was reasonably to be apprehended that such young children might run into or come in collision with the car as it was passing. In Strutzel v. St. Paul City Ry. Co., 47 Minn. 543, 50 N. W. 690, the children were unlawfully crossing the street; but certainly no less degree of care would be required from the railway company in a

case where an injured person was lawfully possessed of the street.

2. In the course of the court's charge the following language was used:

"But on the other hand, you are instructed that it is the duty of the motorman to keep a reasonable lookout for children or others that may be not only on, but in a dangerous proximity to, the tracks, in the operation of its cars on the streets; and if you find from all the evidence that the motorman in this case, in the exercise of reasonable diligence and care, should have seen the child or children sufficiently near the track to have caused a man of reasonable prudence to believe that the child might be injured, * * * then it was the duty of such motorman to have so operated said car as to prevent the injury, or such threatened injury, if the same could have been prevented by the exercise of reasonable care."

Exception is taken to this part of the charge upon the ground that it assumes the children were standing upon the track, or so dangerously near to it that the motorman should have discovered them. The first part of the charge states the proposition in the abstract, but we do not think the remainder of the charge is susceptible of the criticism made. It does not merely assume that the children were standing in a dangerous place, but its more natural import is that if the children were in a dangerous position, and the motorman could have seen them by the mere exercise of reasonable care, then it was his duty to use reasonable diligence in preventing an injury. However, if the language of the court was susceptible of the meaning put upon it by defendant, and likely to mislead the jury, it was the duty of counsel to call the court's attention to it at the time.

3. Ordinance No. 893 of the city of St. Paul was introduced in evidence against defendant's objection. The ordinance reads as follows:

"No person having the control of the speed of a street-railway car passing in a street shall, on the appearance of * * * any obstruction to his car, fail to stop the car in the shortest time and space possible."

The objection is that the ordinance is unreasonable, in that it requires the person in charge of a street car to stop it under all

circumstances, without regard to the safety of the train or persons therein. This ordinance, when given a reasonable construction, is no more than a declaration of the law, and its meaning is very evident. No more is required than that the person in charge of a train shall, upon the appearance of any obstruction, stop his car as soon as possible under the circumstances, with due regard for the safety of the passengers.

4. A witness was permitted to testify that the car ran a certain distance after the accident. This was proper as bearing upon the general conduct and control of the train as it came down the hill and passed the crossing, even though the motorman made no effort to stop the car until signaled to do so by the conductor, for the bearing it might have upon whether the train stopped at the Garfield street crossing, and whether the motorman slowed up, or kept a proper lookout for persons approaching the crossings.

5. While the amount of damages, as found by the jury, would seem to be somewhat large, considering the age of the child, yet we are not disposed to disturb it, since it appears from the record that this is the second trial of this action, and that two juries have returned the same verdict. A verdict for a greater amount was sustained in O'Malley v. St. Paul, M. & M. Ry. Co., 43 Minn. 289, 45 N. W. 440.

Order affirmed.