JOHN H. CAMERON v. DULUTH-SUPERIOR TRACTION COMPANY.[1]

January 20, 1905.

Nos. 14,007—(51).

**Negligence—Evidence.**

The evidence was sufficient to sustain the findings of the jury with reference to the following issues, which were properly submitted by the trial court: That the parents of the child were not guilty of negligence in intrusting the child to the care of an older sister; that the children were not guilty of contributory negligence in attempting to cross the street railway tracks in front of an approaching car; that the motoneer of the car was guilty of negligence in not attempting to slacken the speed of his car, and get it under control, in anticipation of injury to the children who were approaching the tracks.

**Charge to Jury.**

The court did not err in refusing to instruct the jury that the motoneer was not guilty of wanton or wilful negligence, inasmuch as the cause was not tried upon that theory, and such issue was not submitted to the jury by the court.

**Speed of Car.**

It was not error for the court to permit a certain witness to testify with reference to the speed of the car, for the reason that proper objection was not made, and the answer was not stricken out.

**Verdict.**

A verdict of $2,000 was not excessive, considering the age of the boy and the nature of his injuries.

[1] Reported 102 N. W. 208.

Action in the district court for St. Louis county to recover $5,000 for personal injuries sustained by plaintiff's minor son. The case was tried before Dibell, J., and a jury, which rendered a verdict in favor of plaintiff for $2,000. From an order denying a motion for a new trial, defendant appealed. Affirmed.

*Thos. S. Wood,* for appellant.

*John Jenswold, Jr.,* for respondent.

LEWIS, J.

Defendant company operated a street railway system in Duluth. East Fourth street is about sixty six feet wide, and defendant's tracks are laid upon the northerly side thereof, leaving the southerly side for a driveway. The northerly of the two tracks is adjacent to the curb upon the north side of the street, and is used for cars running towards the city, while the southerly track is for cars running from the city; the distance between the two tracks being about nine feet. At a point upon the southerly side of Fourth street, between Twelfth and Thirteenth Avenues East, is located the Hartnett store; and on the opposite side of the street, a little to the west, about midway in the block, is another small store. Plaintiff's infant son, aged four years and seven months, left the family residence, at Sixteenth Avenue East and Fourth street, in charge of a sister eleven years old, and also accompanied by a younger brother, three and a half years of age; the children having been sent by the mother to the Hartnett store to make a purchase. They reached the store, made the purchase, and, while crossing the street in a diagonal direction to the other store, William ran in front of an approaching car from the east, and was injured.

The trial below resulted in a verdict for plaintiff, and defendant appealed from an order denying a motion for a new trial. The court submitted to the jury all of the issues presented at the trial: Were the parents guilty of negligence in sending the children to the store in charge of an eleven year old sister? Were the children guilty of contributory negligence? And was defendant guilty of negligence in the operation of its car, under the circumstances of the case?

1. The evidence is sufficient to sustain the holding of the jury in respect to each of these propositions. The little girl was the oldest child in the family, and had frequently taken charge of the younger children

in going to and from school and other places; and in this respect it does not appear, as a matter of law, that the parents were guilty of negligence in thus intrusting the child to the sister's care.

There was evidence tending to show that at the time in question the children came out of the Hartnett store, intending to cross the street diagonally to the other store; that the boy William ran ahead of the other children; that the sister started after him, and endeavored to catch hold of him, but he, oblivious to any danger, ran in front of the car, and was caught upon the fender, but rolled off under the car, and was injured. Considering the circumstances, the age of the boy, and the evident purpose of the sister to keep control of him, they were not, as a matter of law, guilty of contributory negligence.

As to the negligence of those in charge of the car, the evidence shows that the place where the boy was struck was about two hundred ninety feet westerly from Thirteenth avenue; that the car did not stop at Thirteenth avenue, and was traveling at the ordinary rate of speed in that locality—about twelve or fifteen miles an hour. As the boy approached the southerly track, closely followed by his sister, leading the younger brother, the car was just passing Thirteenth avenue, and the boy was in plain sight of the motoneer and certain witnesses standing beside him, and others in the car and at the front of the store. According to the evidence of these people, the position of the boy was seen, and the possibility of danger to him apprehended, for they called out to attract the child's attention; and the motoneer distinctly saw the children as he passed Thirteenth avenue, and made the remark, "I wonder if those kids will cross the track." Notwithstanding the speed at which the car was going, the motorman made no effort to stop the car and avoid the possibility of an accident until he was within twelve or fifteen feet of the place where the boy might cross the track, when suddenly the child stepped in front of the car, the motorman reversed the electric current, dropped the fender, and caught the boy; but, before the car could be brought to a standstill, he rolled off the fender, under the car, and was injured. The position of the boy in advance of the other children, and the fact that they were going in a well-known direction, were sufficient to put the motoneer upon his guard, and to require him to control the speed of his car in order to prevent a possible accident.

At least, it was a question for the determination of the jury whether, under those circumstances, the motoneer was guilty of negligence in failing to get his car under control in anticipation of a collision at a point where the children might cross the track if they did not notice the approaching car. There are no new principles of law involved in this case. The question of the amount of care required from those in charge of street cars—motormen and conductors—is discussed fully in Strutzel v. St. Paul City Ry. Co., 47 Minn. 543, 50 N. W. 690, and Gray v. St. Paul City Ry. Co., 87 Minn. 280, 91 N. W. 1106.

2. Although the complaint alleged that the motorman wantonly failed to stop the car in time to avoid the accident, the case was not tried upon that theory; and the court submitted the case to the jury entirely upon the proposition of a failure to exercise ordinary care on the part of defendant, and upon the question of contributory negligence on the part of plaintiffs. This was equivalent to informing the jury that the question of wanton or reckless conduct on the part of the motoneer was not in the case, and hence it was not error to refuse a specific instruction upon that point at the request of defendant.

3. It was not error for the court to refuse to receive in evidence a certain ordinance of the city permitting cars to run at the rate of twenty miles an hour upon the street in question. In the first place, there was not sufficient evidence that the ordinance was in force at the time of the accident; and also it was immaterial for the reason that the charge of negligence against defendant was not in running its car at an unlawful rate of speed, but, under the circumstances, in running it in a negligent and careless manner.

4. Error is assigned for permitting a witness to testify that the car was running from fourteen to fifteen miles an hour, upon the ground that no proper foundation had been laid. The objection did not go to the question as finally answered, and no motion was made to strike the answer out.

5. The verdict of $2,000 was not excessive. The child received a severe scalp wound, and his limb was fractured, and, according to the testimony of the physician, although perfectly healed, the limb was shortened at least half an inch, and the boy is compelled to wear an extra thick sole and heel on his shoe to overcome the tendency of curvature of the

spine. Considering the effect such a burden must necessarily have upon the life of a child, and the probability of the permanency of the injury, it cannot be said that the verdict was too large.

Order affirmed.