[No. 12953. Department One. April 12, 1916.]

OLOF SUNDSTROM, *Respondent*, v. PUGET SOUND TRACTION, LIGHT & POWER COMPANY, *Appellant*.[1]

NEGLIGENCE—INJURIES TO CHILDREN—CONTRIBUTORY NEGLIGENCE OF PARENT. It is not contributory negligence, as a matter of law, to send two children, aged seven and nearly four years of age, on an errand a few blocks, in broad daylight, in a residence district.

STREET RAILROADS—INJURY TO PERSONS ON TRACKS—SPEED LIMIT. The speed limit for street cars in a "settled residential district" includes a locality near a suburban business district, although there were no houses immediately abutting on the street for about a block and a half at the place where an accident occurred.

SAME—INJURY TO PERSONS ON TRACKS — NEGLIGENCE — OPERATION OF CARS—EVIDENCE—QUESTION FOR JURY. The negligence of a motorman in running down a child of tender years is a question for the jury, where he saw the child and his older sister in the act of crossing the street when half a block away, at which time he saw the older child cross the track, and the younger child stop near the track, he was exceeding the speed limit and going 15 to 16 miles an hour, approaching a curve for which he started to slow down when two or three car lengths away from the child, and was going 12 to 15 miles an hour when the child, only six or seven feet from the rails, darted in front of the car.

SAME. The fact that the car could not have been stopped in time, after the child started to cross the tracks, does not establish due care in approaching the child, where the motorman saw him pause near the track.

SAME — INJURY TO PERSONS ON TRACKS — NEGLIGENCE—DEFECTIVE FENDER—QUESTION FOR JURY. Negligence in failing to equip a street car with a sufficient fender, is a question for the jury, where there was evidence that the fender stood eighteen inches above the rails, and that it was practical to equip it with one standing six inches above the rails, which might have saved the child if, as testified, he had started to rise when the car struck him.

Appeal from a judgment of the superior court for King county, Albertson, J., entered January 15, 1915, upon the verdict of a jury rendered in favor of the plaintiff, in an action for wrongful death, after a trial on the merits. Affirmed.

[1]Reported in 156 Pac. 828.

*James B. Howe* and *A. J. Falknor,* for appellant.

*Walter S. Fulton* and *Arthur E. Griffin,* for respondent.

ELLIS, J.—Action in tort by a father to recover for the death of his child, a boy three years and nine months old. The child was run over by one of defendant's electric street cars, on Fourteenth avenue northwest, between 67th and 65th streets, in the city of Seattle.

Fourteenth avenue northwest runs north and south. The street car line terminates at West 70th street, which intersects the avenue at right angles. Three blocks south of West 70th street is West 67th street, and two blocks further south is West 65th street, both of which also intersect the avenue at right angles. West 66th street is unopened. At the intersection of the avenue and West 65th street, the street car line turns sharply to the east onto the latter street. A short distance north of this curve, on the west side of the avenue, is a telephone pole upon which is a stop sign as a notice to the operators of south bound cars to diminish speed in order to make the sharp curve with safety.

Between five and six o'clock on the afternoon of September 3, 1914, the mother of the children sent the little boy and his sister, seven years old, on an errand to a grocery store located near the terminus of the car line. Plaintiff and his family reside west of and near the intersection of 65th street with the avenue, the exact location not being shown. The avenue is unpaved, but has sidewalks, wooden on the west side and cement on the east. Though it was unnecessary for the children to cross the street car track, in returning home they went over to the east side of the avenue and amused themselves by rolling along the cement sidewalk certain cans which they had purchased. When they reached a point where a path crosses the avenue diagonally, a little to the north of the above mentioned telephone pole, they started across the street.

The manner in which the accident happened, as detailed by the motorman, is substantially as follows: The street car left the end of the line on this, its last trip for the day, at a little before 5: 55, probably half a minute ahead of scheduled time. The car had gone about one-third of a block south of the intersection of 67th street and the avenue when he noticed the two children starting to cross the street. When they were near the middle of the street, the little girl ran across the track. The little boy stopped about six or seven feet from the east rail of the track. We now use his own language:

"I expected him to stay there until I got by. The girl stopped on the other side of the street, and of course I couldn't tell if she said anything or not; she turned around as if she spoke to him. Probably we were not less than a half a car length from where the child was standing when he made a dart across the street. As soon as he did that I— there was only one thing I could do, was to reverse my car and feed up the emergency. The child was six or seven feet from the rail when he started to make this dart across the street. The little fellow stumbled on the rail. He fell down perfectly flat over the rail. I was right on top of him when he fell over the rail. I could not have been any more than a couple of feet, two or three feet from him when he fell. My car did not knock him down. I reversed the car and fed her up, put the wheels the other way. By that time the fender was right over him. He fell almost the instant the fender went over him. Then my car went almost a car length, I should say; probably a little more. Then I jumped out of the car and the little boy was right in front of the rear truck. When the little boy started to dart across the track when the car was half a car-length away, the car was going twelve or fifteen miles an hour."

On cross-examination, he further testified:

"I started to stop the car when I was probably about two or three car lengths back of where I hit the little boy. I would not say I was going fifteen miles an hour at the time I ran over the child. I said twelve to fifteen miles. When I commenced to bring my car to a stop two or three car lengths back, I was going about fifteen or sixteen miles an hour. The

car was slowing down. I had a good distance to go yet. I first saw the little child starting to cross the street about a half a block away. The little boy and girl were then together in the street."

His testimony shows that this diminution of speed was because of the safety sign.

Negligence is charged in the following particulars: (a) operation of the car at an excessive rate of speed and in violation of a city ordinance; (b) failure to give warning of the approach of the car; (c) equipment of the car with an insufficient fender; (d) failure of the motorman to stop the car after he saw or should have seen the child's danger. Defendant denied negligence and set up contributory negligence of plaintiff as an affirmative defense. The trial resulted in a verdict for plaintiff in the sum of $875. At appropriate times, defendant moved for a nonsuit, for a directed verdict, and for judgment *non obstante*, all of which were denied. From the judgment entered upon the verdict, defendant appeals.

It is first contended that the plaintiff was guilty of contributory negligence in allowing the child to be on the street attended only by his sister seven years old. Appellant relies upon our decision in *Vinnette v. Northern Pac. R. Co.*, 47 Wash. 320, 91 Pac. 975, 18 L. R. A. (N. S.) 328, in which case parents were held guilty of contributory negligence, precluding recovery, in permitting a child six years old unattended to cross and play upon the tracks of a switch yard near their home, where it was killed by a switching train. Though in that case there was some evidence that residents of the neighborhood were accustomed to cross the switching grounds, it was not a public street. The child was technically a trespasser with the knowledge and connivance of the parents. The case here falls directly within our holding in *Tecker v. Seattle, Renton & S. R. Co.*, 60 Wash. 570, 111 Pac. 791, Ann. Cas. 1912 B. 842, a case closely analogous to this upon the facts. There the mother of a child of six

years sent him with his sister of ten to the postoffice two blocks distant, when he was killed by a street car. We held that the parents were not guilty of contributory negligence, as a matter of law, but that the question was one for the jury. While the children in the case here were considerably younger, the evidence indicates that the girl was active and intelligent. According to the weight of authority, it cannot be said that the sending of these two children on the errand in question, on a public street, in broad daylight, in a residence district such as this, was contributory negligence, as a matter of law. *Ihl v. Forty-second Street & G. S. F. R. Co.*, 47 N. Y. 317, 7 Am. Rep. 450; *Collins v. South Boston R. R.*, 142 Mass. 301, 7 N. E. 856, 56 Am. Rep. 675; *Adams v. Metropolitan St. R. Co.*, 60 App. Div. 188, 69 N. Y. Supp. 1117; *Kennedy v. Hills Bros. Co.*, 54 App. Div. 29, 66 N. Y. Supp. 280; *Dahl v. Milwaukee City R. Co.*, 62 Wis. 652, 22 N. W. 755; *True & True Co. v. Woda*, 201 Ill. 315, 66 N. E. 369; *Cameron v. Duluth-Superior Traction Co.*, 94 Minn. 104, 102 N. W. 208.

It is next urged that the record is wholly devoid of evidence that defendant was negligent. As to the charge of insufficient warning, this may be granted; but as to the other charges, we are clear that the evidence presented a case for the jury.

We have repeatedly held that an act done in violation of positive law is negligence *per se,* in the absence of exculpatory circumstances amounting to necessity. *Johnson v. Heitman,* 88 Wash. 595, 153 Pac. 331, and decisions there cited. A city ordinance in evidence provides that:

"No driver shall propel or cause to be propelled any street car within the business or settled residential districts at a speed exceeding twelve miles an hour." Seattle Ordinance, No. 28,563, par. 15.

The testimony of the motorman himself leaves hardly a doubt that this ordinance was being violated up to the very time of the accident. He said that, when he first saw the

children starting across the street, half a block away the car was running at from fifteen to sixteen miles an hour; that he started to stop the car in order to make the curve two or three car lengths before he hit the child, and was then going at twelve to fifteen miles an hour. He said, "I would not say I was going fifteen miles an hour when I ran over the child. I said twelve to fifteen miles."

But appellant asserts that, because there were no houses immediately abutting on this street for about a block and a half at this place, it was not within a "settled residential district." The evidence, however, shows that the properties on the side streets were built up and that, at the end of the line a short distance away, there was a suburban business center consisting of several stores. The ordinance does not say "block," but "district." It does not say "densely settled" but "settled." A district according to Webster's International dictionary is a "portion of territory of undefined extent." We must give to the word its ordinary meaning of a region or locality.

Nor do we find merit in the claim that, because the ordinance is penal, it is void for uncertainty in not defining the word "district." That word is so well understood in ordinary parlance as to require no more specific definition.

But aside from negligence in law consisting in the violation of the ordinance, the question of negligence was one for the jury. The motorman saw the children in the act of crossing the street when the car was about half a block distant; saw the little girl cross the track and the little boy stop almost upon the track for what must have been but an instant; saw the little girl stop, look back and apparently speak to the boy. It was clearly for the jury to say whether, in the exercise of reasonable prudence, he should not have anticipated that the child would probably attempt to cross the track and join his sister. The car throughout this distance was running, according to the motorman's own testimony, at from twelve to fifteen or sixteen miles an hour. It

must have made that distance in five or six seconds. The child could hardly have stood still for more than a barely appreciable time after his sister left him; since, when the motorman first saw them about half a block distant, they were moving across the street.

It is argued that there is not a syllable of evidence in the record that the car could have been stopped in time to avoid accident had it been going at less than twelve miles an hour. True, the evidence is not there in syllables, but the evidence of facts from which the jury might draw the inference is there. If, as the motorman testified, the car going between twelve and fifteen miles an hour was actually stopped in about its length, then surely the jury were justified in finding that, had it been running at such a rate as the position of a child of such tender years would have dictated to a reasonably prudent operator, it could have been stopped in time to have saved this child's life. What is a reasonable rate of speed is always a relative question to be determined by circumstances. In approaching small children, evidently bent upon crossing the street, a reasonable rate would be much less than what might be considered reasonable under other circumstances. Like other situations calling for the exercise of reasonably prudent conduct, the question here was one for the jury.

It is argued that, when the motorman saw this child pause near the track, he was not bound to anticipate that it would suddenly run in front of the car. Several cases from other jurisdictions are cited which, in a general way, seem to sustain this argument, but in none of them were the facts parallel to those here presented. In nearly all of them there was lacking anything in the conduct of the child to indicate an intention to cross the track, and in one of them it was merely held that the finding of the jury upon the subject was binding upon the appellate court. So here, had the jury found for defendant, we would not have felt warranted in disturbing the verdict upon a state of facts from which it is evident rea-

sonable minds might draw different inferences. On this, as on other questions, we think the case is ruled by our own decision in *Tecker v. Seattle, Renton & S. R. Co., supra.*

As to the charge that the car was not equipped with a reasonably safe fender, the evidence was conflicting. There was some evidence tending to show that the fender stood at least eighteen inches above the rails of the track. There is ample evidence to show, and the fact seems to be conceded, that it was practicable to have used a fender standing not more than six inches above the track. While there was some evidence that a fender, even at the latter height, would have passed over the boy's body when lying prone upon the track, there was also some evidence that the boy had started to rise when the car struck him. The question was one for the jury. *Tecker v. Seattle, Renton & S. R. Co., supra.*

Finding, as we do, that the evidence was sufficient to carry to the jury the questions of negligence, contributory negligence, and proximate cause, we cannot disturb the verdict.

The judgment is affirmed.

MORRIS, C. J., MOUNT, FULLERTON, and CHADWICK, JJ., concur.