<hr />

## DAVIS *v*. LIGHT & TRACTON Co.

[81 South. 486, Division B. No. 20660.]

1. STREET RAILROADS. *Injuries on track. Duty to ring gong.*

   While a street railway company is primarily under no obligation to sound its gong in the middle of the block or where there are no street crossings, yet this duty is upon the company in operating its car at any point where from the existing conditions it is apparent that the danger of injury to the public at that time and place will be materially lessened by sounding the bell.

2. STREET RAILWAYS. *Injury on track. Negligence of motorman. Failure to ring gong.*

   In a suit for injuries to a boy on a bicycle who collided with a street car at the foot of an intersecting driveway down which he was coasting, it is not a controlling fact that the front end of the car did not run down or collide with the plaintiff. It was for the jury to say whether the motorman should have sounded his gong and given proper warning of the approaching car and whether his failure to do so contributed to plaintiff's injury.

Appeal from the Jackson circuit court of Hinds county

Hon. W. H. Potter, Judge.

Suit by Walter Davis, by next friend, against the Jackson Light & Traction Company. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court. (No brief of counsel found in the record.)

*Teat, Teat & Potter,* for appellant.

*Wells, May & Sanders,* for appellee.

Stevens, J., delivered the opinion of the court.

Appellant as plaintiff in the court below sued for personal injuries alleged to have been sustained as a result of collision with one of the street cars of defendant company. Plaintiff at the time this suit was filed was a boy eleven years of age attending Galloway School, one of the regular public schools of the city of Jackson, situated on Bailey avenue, along which defendant operated street cars. In May, 1918, when school was dismissed, plaintiff, with other boys, went by the basement of the school building to get his bicycle, and three boys mounted their wheels and started down a steep driveway on the south side of the school grounds approaching at right angles Bailey avenue. There is evidence tending to show that south of the driveway there is a fence and shrubbery that obstructs the view south; that one of the boys first emerged and turned south on Bailey avenue; and that, following him, plaintiff and a companion riding almost side by side emerged into Bailey avenue just as one of the street cars was rapidly approaching from the south. The boy Culley, plaintiff's companion, was upon plaintiff's left, and, as the two emerged into Bailey avenue, both turned their

wheels to the left attempting to curve to the rear of the fast approaching car; but the plaintiff went angling toward and collided with the rear end of the street car and received serious injuries. The boy in attempting to avoid injury threw up his hands, but the force of the impact from the rapidly moving car was too great, and the boy was not able to swerve his wheel sufficiently to the left to prevent a hard collision.

The testimony on behalf of the plaintiff further tends to show that the motorman was coasting his car at the time, and on that acoount the street car was making very little noise; that the motorman did not ring a bell nor sound his gong; and that the boys on their wheels did not know the car was coming until they were in Bailey avenue and in close proximity to the moving car. The testimony further tends to show that the track of the defendant company in front of Galloway School and for a long distance south of Bailey avenue was perfectly straight; that many school children were in the street and on either side of the street in front of the school building; that this entire crowd of children were leaving the school premises at the regular hour of adjournment and in the usual confusion and making such noise as school children generally make on being released from their daily program at school; and that the motorman could see these children for some distance as he approached.

No question is raised as to the extent of the injury or the sufficiency of the proof in that regard. On the trial of the case a peremptory instruction was granted the defendant company, and we are left somewhat in doubt as to the ground upon which the court's ruling was based; no brief by counsel for appellee being on file. It appears that the school ground was some five or six feet above the grade of the street, and that boys on their wheels in leaving the school ground came down grade into Bailey avenue. The plaintiff, while young, testified in his own behalf and was explicit in his

statements that he could not turn his wheel far enough to the left on account of the other boy, his companion, and that it was impractical to attempt to go straight across or to the right, and therefore in front of the street car, and that the best way for him to escape injury under the circumstances was to turn to the rear of the moving car. The boy also indicated by an object the distance from the point he was struck to the driveway which leads into the school grounds, and it appears that this distance was approximately ten feet.

Much might be said about the evidence in detail in this cause, and from a discussion of the facts we might reasonably draw inferences of negligence. Attention could well be directed to the fact that one boy upon his bicycle emerged from the school driveway into Bailey avenue and proceeded south toward the approaching car, and that the motorman could therefore well observe that this boy had suddenly emerged from the school grounds and that other boys would likely be following him. It is also in evidence that many children were upon the street, some going north, others south, while some were in the street, and notwithstanding this fact the motorman was driving his car rapidly toward and through this crowd of school children of tender years without sounding his gong or giving any warning whatever of his approach. Mr. Joyce makes this observation:

"It is the duty of the motorman, in the regulation of his cars, to consider the apparent age and conditions of persons upon the track or in dangerous proximity thereto and should be held to a high degree of care and watchfulness where he observes or has reason to expect that small children are playing near the track."

It is also stated in Cyc., vol. 36, 1483c, as follows:

"As a part of their duty to exercise ordinary care to avoid injury, it is the duty of the employees in charge of the street car to give a proper warning, as by

sounding a bell or gong, or otherwise, as the car approaches to a place where under the circumstances there is danger of a collision with persons or vehicles, such as its approach to a street crossing."

In *Austin* v. *Traction Co.*, 95 Miss. 867, 50 So. 632, our court, by SMITH, J., employed the following language: "It is the duty of the motorman, while running his car to keep a reasonably careful lookout for and use reasonable precautions to prevent accident to, persons lawfully using the street; the degree of care required of him in this regard varying according to the time, place, and circumstances. Whether the motorman has complied with his duty presents as a general rule, a question of fact for the jury."

The facts of this case somewhat resemble the facts in the case of *Pascagoula Street Railway & Power Co.* v. *Brondum*, 96 Miss. 28, 50 So. 97, and the standard of care there required of street railway companies for operating their cars along or in front of a public school where small children are playing or leaving the school grounds applies with equal force to the case at bar. It is not alone a question as to whether the motorman saw or could have seen the plaintiff in time to avoid a collision. Neither is the inquiry confined to the question whether the boy in this case saw or could have seen the rapidly approaching car. There is room to contend that the collision was an accident for the consequences of which the defendant company ought not to respond in damages; but the proper inferences as to negligence in this case should, we think, be drawn by the jury and not by the court. As stated in the case of *Mississippi Central Ry. Co.* v. *Mason*, 51 Miss. 234:

"Where the facts are conceded, but the inference in regard to negligence is still doubtful, depending upon the general knowledge and experience of men, it is the judgment and experience of the jury, and not of the judge, which is to be appealed to."

Under any view of the case, then, it is one for the jury. The granting of the peremptory instruction constitutes reversible error. As stated by the supreme court of Kansas in *Railway Co.* v. *Carlson,* 58 Kan. 62, 48 Pac. 635, a case illustrating one instance, where a motorman in charge of a street car drove at the rate of twelve miles per hour into a crowd of school children as they were leaving the school:

"The reasonableness of the conduct of the motoneer is to be determined, not alone from the liability to inflict injury on this particular boy, but from the liability to hurt others, as well."

It might well be suggested that a street railway company is primarily under no obligation to sound its gong in the middle of the block or where there are no street crossings; but this duty, we conceive, is upon the defendant company in operating its car at any point where from the existing conditions "it is apparent that the danger of injury to the public at that time and place will be materially lessened by sounding the bell." *Murphy* v. *Derby Street Ry.,* 73 Conn. 249, 47 Atl. 120. It is not a controlling fact that the front end of the car did not run down or collide with the plaintiff. It was for the jury to say whether the motorman should *have* sounded his gong and given proper warning of the approaching car and whether his failure to do so contributed to plaintiff's injury. *Gray* v. *St. Paul City Ry. Co.,* 87 Minn. 280, 91 N. W. 1106.

The judgment of the learned circuit court will be reversed, and the cause remanded.

*Reversed and remanded.*