[No. 15967. Department One. December 14, 1920.]

ELIZABETH NORTON, *Respondent,* v. THE CITY OF SEATTLE, *Appellant.*[1]

APPEAL (465) — REVIEW — HARMLESS ERROR — CURED BY VERDICT. Error in submitting an issue to the jury is cured where a proper conclusion was reached.

STREET RAILWAYS (23-29) — NEGLIGENCE — LAST CLEAR CHANCE — QUESTION FOR JURY. Whether a gripman had the last clear chance to avoid killing a child is a question for the jury, where there was evidence that the child was carried some distance on the fender of the car after being struck before the car was stopped and he was dragged under the fender.

DEATH (9) — ACTIONS — CONTRIBUTORY NEGLIGENCE OF PLAINTIFF. The mother of a deaf and dumb child is not guilty of contributory negligence, as a matter of law, precluding an action for the death of the child run over by a street car, where she used more than ordinary care, seldom allowing the child out of her sight for any appreciable time, and it had been visiting in the apartment below for but a few moments before running out on the street.

STREET RAILWAYS (28) — NEGLIGENCE OF MOTORMAN — SUFFICIENCY OF EVIDENCE. There is sufficient evidence of the negligence of a gripman, who struck and ran over a deaf and dumb child, where witnesses testified that his view was unobstructed, that the child ran out in front of the car without stopping, and that no effort was made to stop the car.

Appeal from a judgment of the superior court for King county, Allen, J., entered April 21, 1920, upon the verdict of a jury in favor of the plaintiff, in an action for wrongful death. Affirmed.

*Walter F. Meier* and *Frank S. Griffith,* for appellant. *Karr & Gregory* and *H. G. Sutton,* for respondent.

MACKINTOSH, J.—The mother of a child of the age of four years and nine months brought this action against the city of Seattle for damages arising from

[1] Reported in 194 Pac. 373.

the death of the child, caused by its being run over by a street car belonging to the appellant.

The respondent is the wife of a sergeant in the United States army, who has been absent in France in the service of his country. After his departure from San Francisco, where he and the respondent had lived for a few months, he contributed nothing for the support of his wife and child, and she had been compelled to come to Seattle, where she was earning a living for them both. She had not heard from her husband for several months, and although she had written to him announcing the death of their child, she had no reply to these letters.

The child was deaf and dumb, and on the afternoon of May 12, 1919, had gone to a grocery store on the southeast corner of 20th Avenue and Yesler Way for the purpose of getting some candy. He stepped out of the store on to Yesler Way and stopped on the sidewalk at a time when the cable car, running easterly upon the Yesler Way line, had stopped at the west side of 20th Avenue for the purpose of discharging passengers. The motorman sounded his gong and the car started up across 20th Avenue and over the brow of the hill which extends easterly from 20th Avenue. The gripman testified that the child left the sidewalk and proceeded to a distance within seven feet of the track, and then looked up and saw the car, and the gripman, assuming that the child would remain in that position, allowed the car to proceed and immediately, without warning, the child darted in front of the car. The gripman then attempted to stop, but too late to avert the disaster.

The testimony of other witnesses in the case shows that the gripman's view was unobstructed at all times, and that the child left the sidewalk and without stop-

ping ran across the street in front of the approaching car, and no effort was made by the gripman to stop; that he rang the gong, which was ineffectual for the reason that the child was incapable of hearing. The testimony of one witness is to the effect that the child was carried upon the fender of the car between twenty-five and thirty feet before he was rolled under the fender and the car ran over him.

The appellant urges three grounds for the reversal of the case; first, that the respondent had no capacity to bring and prosecute the action and, incidental to this, that the court was in error in submitting to the jury the question as to whether the father had deserted his family; second, that the court erred in instructing the jury upon the doctrine of last clear chance; and third, that there was not sufficient evidence to sustain the verdict.

I. This action was commenced under § 184, Rem. Code, which is as follows:

"A father or in case of the death or desertion of his family the mother, may maintain an action as plaintiff for the injury or death of a child, and a guardian for the injury or death of his ward."

The testimony bearing upon the question of desertion is very brief and establishes that the respondent and her child had been abandoned. It therefore becomes immaterial whether the court should have determined this as a matter of law, or whether the question was one of fact to be submitted to the jury. If it was a matter of law, the court should have decided that the respondent had capacity to sue, but having submitted it as a question of fact to the jury, under adequate instructions, and the jury having arrived at the proper conclusion, the error, if it was one, was without prejudice.

II. The facts as testified to by some of the witnesses were sufficient evidence to warrant the court in instructing upon the doctrine of the last clear chance. If it was true, as was testified to, that the child was carried upon the fender of the car some distance after being struck, there arose a question for the jury's determination whether the car might not have been stopped before the child was dragged under the fender and run over. If, by the exercise of reasonable care after the gripman knew, as he must have, that the child had been caught in the fender of the car, the car might have been stopped before the fender passed over the child, the jury might be justified in finding that he did not make use of his last clear chance of averting the catastrophe. The weight of this evidence, of course, was for the jury. It was, therefore, not error to submit the case upon the last clear chance theory. The facts of this case, taking them as produced by the respondent, bring the case within the operation of the rule of *Locke v. Puget Sound Int. R. & P. Co.*, 100 Wash. 432, 171 Pac. 242, L. R. A. 1918D 1119. See, also, *Sundstrom v. Puget Sound Tr., L. & P. Co.*, 90 Wash. 640, 156 Pac. 828; *Herrick v. Washington Water Power Co.*, 75 Wash. 149, 134 Pac. 934, 48 L. R. A. (N. S.) 640. There is nothing inconsistent in this holding with those cases which hold that the driver of a street car may assume that persons on the street will exercise due care for their own safety. *Duteau v. Seattle Elec. Co.*, 45 Wash. 418, 88 Pac. 755; *Kiely v. Seattle Elec. Co.*, 78 Wash. 396, 139 Pac. 197; *Johnson v. Washington Water Power Co.*, 73 Wash. 616, 132 Pac. 392; *Hartley v. Lasater*, 96 Wash. 407, 165 Pac. 106.

III. It is claimed that the contributory negligence of the mother in allowing the child to be upon the

street was sufficient to bar a recovery. An examination of the evidence, however, does not reveal a state of facts which would justify such holding by the court. As a matter of fact, the evidence strongly indicates that respondent used more than ordinary care in protecting this child and in keeping him out of danger. She had been in the habit of taking him to and from school, and testified that she never allowed him out of her sight for any appreciable period. On the afternoon of the accident, she was in her apartment, preparing for the evening meal, and the child had gone downstairs to visit the landlady of the apartment house, as she presumed, which was a custom the child had; that she had gone down a couple of times and had seen the child there, and that the next she heard of the child was when the news was brought to her of this fatality; that the time which elapsed from the time when the child left her room to when the news was brought to her was not exceeding twenty minutes. Under these facts, the court could not say, as a matter of law, that the mother was guilty of contributory negligence.

It is argued, further, in support of appellant's position, that there was not sufficient evidence to go to the jury, for the gripman, after seeing the child standing near the track and apparently observant of the car, was guilty of no negligence in continuing the car upon its course, having a right to rest upon the assumption that the child would not then precipitate itself upon the track. It might be, if the gripman's testimony was the only evidence in the case, that the court would be forced to the conclusion that there was no act of negligence; but the occurrence as it was related by other witnesses does not substantiate the gripman's story, and if this other testimony is true—and the jury

were at perfect liberty to believe it—there was evidence of negligence upon the gripman's part independent of that to which we have referred as giving rise to the application of the last clear chance doctrine.

Upon the whole record we are satisfied no error was committed, and the judgment will be affirmed.

HOLCOMB, C. J., BRIDGES, FULLERTON, and PARKER, JJ., concur.