[Civil No. 4718.   Filed October 30, 1945.]

[163 Pac. (2d 280.]

*J. R. WOMACK and CLIFFORD GIDEON, Appellants, v. EDWARD J. PREACH, Appellee

* See Supplemental Opinion, 64 Ariz. ——, 165 Pac. (2d) 657.

Messrs. Stockton & Karam, for Appellants.

Mr. Kenneth S. Scoville and Mr. Lynn M. Laney, for Appellee.

STANFORD, C. J.—In this opinion we will designate the appellee the plaintiff, and the appellants the defendants as they were in the trial court.

The accident hereinafter described occurred on North Seventh Street between Roosevelt and Garfield Streets in the City of Phoenix, Seventh Street running north and south and the other two streets running east and west. There were traffic control lights at Roosevelt Street but none at Garfield Street.

During the noon hour on the 1st day of June, 1943, the mother of Howard Joseph Preach, Jr., who resided at 608 East Garfield Street with her husband and two other children, directed her son, Edward Joseph, who was four and one-half years old, to go to a pay-n-takit store on the east side of Seventh Street located between Roosevelt and Garfield Streets, and purchase a loaf of bread. Defendant Gideon, at about 12:30 o'clock on said date, was proceeding south on North Seventh Street with a truck belonging to defendant Womack. The truck was loaded with gravel and rubbish. Gideon stopped for the light signals at Roosevelt Street. When it was his time to proceed, he crossed Roosevelt Street and continued south at a speed of approximately fifteen miles per hour. The block between Roosevelt and Garfield Streets had many cars parked on both sides. The Preach boy did not go to the light signals on Roosevelt Street to cross Seventh Street, nor did he go to the crossing at Garfield Street, but went north on Seventh Street until he was opposite the pay-n-takit store and

then attempted to cross Seventh Street. The driver of the truck apparently saw the boy crossing the street and swerved his truck to the east in an effort to avoid the boy, but was not successful and the boy was killed at a time when the truck was somewhere about the center of the road.

Plaintiff brought his action for damages against the defendants in the superior court for the death of the child. A jury returned a verdict for $5,000, and from that verdict, and the judgment following, defendants appeal.

Defendants, who have appealed herein, charged that the parents of the child were careless and negligent in sending him upon the street and the damage sustained was the direct and proximate result of such negligence and carelessness, and the same contributed to and helped to cause the death of the child.

Plaintiff maintains that the truck driven by defendant Gideon was not equipped with proper and sufficient brakes so that it could be kept under control; that the brakes were applied some thirty feet north of the place where the child was run over as shown by marks upon the pavement, and that the defendants wantonly, carelessly and negligently drove the truck injuring and killing said child.

The testimony shows that witness A. L. Miller, for defendant, who was sitting in his car parked diagonally in front of the pay-n-takit store, happened to be looking across the street at the time of the accident. To Mr. Miller the child appeared to be starting across to his side of the street at the same time he saw the truck. The child and the truck appeared to the vision of Mr. Miller about the same time and the best we can understand the testimony is that each was about fifteen feet from the point of impact; that the child started across the street where there were no signals, somewhat near the middle of the block, and commenced to run

across from the rear of cars parked in front of a cleaning establishment. He also testified that the truck was swerving and the boy was inclining to the south, and that the truck swerved to the east of the center line of the street at the time of the impact.

Clifford Gideon, one of the defendants who also was the driver of the truck, testified that he had reported to the repair foreman of the other defendant, Mr. Womack, the fact that the brakes on the truck needed attention. He testified, however, that when he was driving the truck he had no idea that it was unsafe to be driving it.

The testimony of Charles Thomas, a police officer of the City of Phoenix, showed that from his measurements the truck commenced to swerve over thirty feet north of where the child was killed.

Witness T. R. Mofford, who qualified as Captain of Traffic of the Police Department of the City of Phoenix, and also who qualified that he had taken special training with regard to "checking cars stopping and traffic matters of that sort," and had taken a traffic and police course at the Northwestern University, testified that some thirty minutes after the accident he took the truck from the rear of the police station in Phoenix and drove it several blocks; that in so doing he tested the brakes as to their sufficiency and he testified that at ten miles an hour it took fifty feet in which to stop the truck by the use of both the foot and emergency brakes. He further testified that the brakes upon the truck were not sufficient and that if the brakes had been sufficient he could have stopped the truck in ten or fifteen feet going at the rate of ten miles per hour. The testimony further shows that the truck went approximately thirty feet after the accident.

Defendants refer to the case of *Dattola* v. *Burt Bros.*, 288 Pa. 134, 135 Atl. 736, 737, 51 A. L. R. 205. Defendants quote from that case:

"One seeking damages for the negligent killing of his infant child must prove defendant's negligence without disclosing fault on his part, but is not required to disprove contributory negligence."

We quote further from said case:

" . . . Parents are presumed to do their duty, and the mere fact that a child of tender age is momentarily found alone in a public street does not as matter of law establish the contrary. The mere happening of an accident neither proves negligence nor contributory negligence. Knowingly to permit a small child to wander unprotected upon city streets is want of care, but here the record is barren of any evidence of such permission. The presence of a child upon the street may be the result of parental negligence or in spite of its vigilance, and, in the absence of any explanation, a court cannot declare it the former. The question of parental care, or the lack of it, is one of fact, and usually for the jury. . . . "

To further sustain the view of the defendants, they have cited the following cases: *Stumpf* v. *Montgomery*, 1924, 101 Okl. 257, 226 Pac. 65, 32 A. L. R. 1490; *McCullough* v. *Harshman*, 1924, 99 Okl. 262, 226 Pac. 555; *Millar* v. *Semler*, 1931, 137 Or. 610, 3 Pac. (2d) 987; 1 Mechem on Agency, 2d Edition, Section 156, page 111, and many others.

We quote our constitution, Article 18, Section 5, under the heading of "Contributory negligence":

"The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact and shall, at all times, be left to the jury."

In interpreting this section we have said in the case of *Campbell* v. *English*, 56 Ariz. 549, 110 Pac. (2d) 219, 221:

"We have passed upon the meaning and effect of this constitutional provision in innumerable cases and have held, in effect, that when the issue is one of contributory negligence, that is to say, when there is evidence from which a jury could find, under the rules

above set forth, that the defendant was guilty of negligence, and one of the defenses is that plaintiff also was guilty of negligence, the constitution takes away from either the trial or appellate court the right to determine whether, as a matter of either law or fact, the evidence shows such contributory negligence to exist, and leaves the question both of law and fact on that particular issue to the decision of the jury. . . . ''

Also in the case of *Pearson & Dickerson Contractors* v. *Harrington*, 60 Ariz. 354, 137 Pac. (2d) 381, 382, we said:

''It may be granted that plaintiff by his conduct contributed to his injury, but whether he did or not was a question for the jury. . . . ''

Sec. 66–135, Arizona Code Annotated 1939, is as follows:

''*Brakes.*—Every motor vehicle when operated upon a highway shall be equipped with brakes adequate to stop and hold such vehicle, including two (2) separate means of applying the brakes, each of which shall be effective on at least two (2) wheels and so constructed that no part which is liable to failure shall be common to the two, except that a motorcycle need be equipped with only one (1) brake. All such brakes shall be maintained in good working order and shall conform to regulations which may be adopted by the department.''

■ Violation of the foregoing section would be negligence in itself, and the court instructed the jury that:

'' . . . Before the plaintiff could recover by reason of defective brakes, it is necessary that you should find that the defective brakes were the proximate cause of the death of the deceased child.''

■■ The testimony in this case shows that the father had taken this child, some weeks prior to the accident, and taught him how to cross Seventh Street where the traffic control lights are installed at Seventh and Roosevelt Streets, being the intersection just north of where the child was killed. The testimony also shows that the father had sent the child to a Chinese store on Third and Roosevelt Streets, but in the crossing of

streets going to that place there were no traffic control lights. While the child was wrong in attempting to cross the street between the two intersections, it does not license a motorist to be at all lax in vigilance. We are not going to say that a vehicle in the condition of this vehicle should not be upon the streets, for in the haste of life the employer, even though told by an employee through his foreman that the brakes were poor, did not stop to have them fixed, but we do say that when such a defectiveness in a motor vehicle is the proximate cause of injury or death, then the owner is responsible for such act. It would be plausible, as we view the testimony, for the jury in this case to believe that the driver of the truck could have stopped his truck in time to save the life of the child had the truck been equipped with better brakes. The matter, however, under the law as we have quoted, is entirely for the jury.

The defendants claim that the court erred in giving the following instructions:

"On this question of contributory negligence I instruct you, gentlemen, that if you find that the defendant was negligent and that this negligence was the proximate cause of the accident and injury to the plaintiff and if you further find from a preponderance of the evidence that said negligence, if any, on the part of the defendant was wanton, then I charge you that the defendants cannot avail themselves of the defense of contributory negligence, and in that event the plaintiff would be entitled to recover."

"Now, the word 'wanton' as used in these instructions indicates a reckless disregard of the rights of others or a reckless indifference to results. In this connection I instruct you that by a reckless disregard of the rights of others or reckless indifference to results as those words are used in the foregoing instruction, is meant the intentional doing of an act or the failure to do an act which it was the duty of the truck driver to do, with knowledge on his part, or reason to have knowledge of facts which would lead a reasonable man to realize that his conduct immediately previous

to his running into the child not only created an unreasonable risk of bodily harm to persons who might be on the street as the child was, but also involved a high degree of probability that substantial harm would result to persons so on the street.''

In this respect the defendants claim there was no evidence in the record upon which to base such instructions, and they quote from the notes in 45 C. J., Negligence, p. 679:

''Wanton injury must be predicated upon actual knowledge of another's peril, and failure to take available preventative action, knowing that such failure will probably result in injury.''

On this subject the plaintiff quotes from the case of *Conchin* v. *El Paso etc. R. Co.,* 13 Ariz. 259, 108 Pac. 260, 262, 28 L. R. A., N. S., 88:

'' . . . To constitute 'wantonness' it is not essential that the injury should have been intentional or the probable consequence of the wrongful act; it is sufficient that the act indicates a reckless disregard of the rights of others, a reckless indifference to results, or that the injury is the likely and not improbable result of the wrongful act. The word 'likely' is here used in the sense of something more than possible and less than probable. 'Wantonly. Done in a licentious spirit, perversely, recklessly, without regard to propriety or the rights of others; careless of consequences, and yet without settled malice.' 2 Bouvier [Law Dictionary], 1207.''

The fact that the driver of the truck, defendant Gideon, had the truck heavily loaded; that it had dual-wheels and was going down through a busy thoroughfare with defective brakes, and the fact that the defectiveness of the brakes had been reported to defendant Womack, or his agent, and the swerving of the car in front of the path of the child so that the left hind wheel of the truck was east of the line in the center of the street, we feel was sufficient for the court to submit to the jury the question of the wantonness of the de-

fendants. We quote from Restatement of Law, Torts, Negligence, Sec. 500:

"The actor's conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him."

Under the circumstances neither would contributory negligence on the part of the plaintiff be a defense. We quote from Restatement of Law, Torts, Negligence, Sec. 482:

"(1) Except as stated in Subsection (2), a plaintiff's contributory negligence does not bar recovery for harm caused by the defendant's reckless disregard for the plaintiff's safety."

"(2) A plaintiff is barred from recovery for harm caused by the defendant's reckless disregard for the plaintiff's safety if, knowing of the defendant's reckless misconduct and the danger involved to him therein, the plaintiff recklessly exposes himself thereto."

The case of *Carrisosa* v. *Southern Service Co.*, 128 Cal. App. 160, 16 Pac. (2d) 1032, 1034, is where action was brought for damages for the death of a minor son of plaintiffs where they claimed that the accident resulted from his being run over by a delivery truck. Around noon the mother of the child, who was four years and three months of age, accompanied him to the side walk on the south side of a street and sent him across to a grocery store for the purpose of buying an article. While the boy was purchasing the article she returned hastily to the house to turn off the gas under her washing and then returned to the sidewalk, but during her absence the accident had occurred. As the boy was crossing the narrow street he either ran into, or was struck by the laundry truck receiving injuries resulting in death. The court said:

" . . . While a number of cases are cited by the appellants in which it has been held that parents may not recover for injuries to their children if themselves guilty of any negligence which contributed to the happening of the accident, none of these cases furnish support for the contention here made that the question of such contributory negligence in this case is one of law and not one of fact. . . . "

In *Sundstrom* v. *Puget Sound Traction, Light & Power Co.,* 90 Wash. 640, 156 Pac. 828, 829, an action was brought in tort by the father to recover for his child, a boy three years and nine months of age. The child was run over by an electric car. Between five and six o'clock in the afternoon the mother of the children sent the little boy and his sister, seven years old, on an errand to a grocery store, and although it was unnecessary to cross the streetcar track they did so in returning and the accident occurred. Defendant denied negligence and set up contributory negligence of the plaintiff as a defense, and the court said:

" . . . The child was technically a trespasser with the knowledge and connivance of the parents. The case here falls directly within our holding in *Tecker* v. *Seattle, Renton & S. R. Co.,* 60 Wash. 570, 111 Pac. 791, Ann. Cas. 1912B, 842; a case closely analogous to this upon the facts. There the mother of a child of 6 years sent him with his sister of 10 to the post office two blocks distant, when he was killed by a street car. We held that the parents were not guilty of contributory negligence as a matter of law, but that the question was one for the jury. While the children in the case here were considerably younger, the evidence indicates that the girl was active and intelligent. According to the weight of authority it cannot be said that the sending of these two children on the errand in question, on a public street in broad daylight, in a residence district such as this, was contributory negligence as a matter of law. . . . "

The testimony in the case is indeed conflicting, and it was fitting, therefore, that the matter was submitted to a jury in order that all angles of the case

could be determined. We quote from the case of *Young Mines Co.* v. *Citizens' State Bank,* 37 Ariz. 521, 296 Pac. 247, 249:

" . . . The rule in regard to a conflict in the evidence is far different in the trial court from that in the appellate court. So far as this court is concerned, we will sustain a verdict of a jury, or the findings of the trial court, if any reasonable evidence can be found in the record to support them, and we will not consider the weight of the evidence or conflict thereon. . . . "

The judgment is affirmed.

LaPRADE and MORGAN, JJ., concur.