187 P.2d 325

BUTANE CORPORATION et al. v. KIRBY.

No. 4893.

Supreme Court of Arizona.

Dec. 1, 1947.

Jennings, Strouss, Salmon & Trask, J. A. Riggins, Jr., and Henry S. Stevens, all of Phoenix, for appellants.

Wm. P. Lutfy, Stockton & Karam and Emmett R. Feighner, all of Phoenix, for appellee.

LA PRADE, Justice.

This is an appeal from a judgment awarding damages, based upon a jury verdict, to the appellee, hereinafter referred to as plaintiff, as administratrix of the estate of Frank Wolford, deceased. Appellants, defendants below, will be designated as defendants. The deceased Frank Wolford was killed in an accident which occurred on South 19th Avenue, Phoenix, where this street crosses the Salt River, at about 6:30 p. m. on the 17th day of January, 1945. Defendant P. T. Hastings was employed as a truck driver by defendant Butane Corporation, and at the time of this accident was operating a tank truck for defendant corporation. The accident occurred at a dip in the highway, which dip is a part of the bed of Salt River. At the time of the accident it was dark and had been for a considerable time. Witness R. H. Brumback testified that he left his home at 13 South 22nd Avenue to go to his ranch which is located one-half mile south of the Baseline Road; that at the time he left his home he turned his automobile lights on and proceeded south on 19th Avenue; that when he came to the bottom of this dip he saw a Ford pickup truck (later identified as a 1931 Model A Ford pickup truck), to which was attached a small two-wheel livestock trailer, parked on the east half of the pavement in the bottom of the dip; that it was then dusk; that he was right on top of the truck and trailer before he saw them; that this situation aroused

his curiosity to the extent that he stopped his car, observed that there were no lights on the truck or trailer and apparently no one in attendance; and that when he returned approximately one-half hour later the accident had occurred. The Ford pickup had apparently been proceeding north on 19th Avenue. The paved portion of the highway at this point was 20 feet in width. On each side of the pavement there was a 3-foot shoulder composed of river sand and rock aggregate. The dip referred to commences at a point approximately 850 feet north of the intersection of 19th Avenue and Broadway and has a width of approximately 750 feet. In proceeding north on 19th Avenue from Broadway the road gradually declines toward the river. The south edge of the dip is 2.4 feet lower than the elevation at the intersection of Broadway and 19th Avenue (850 feet south). The accident occurred at a point approximately 480 feet north of the south edge of the dip. The elevation at the point of the accident was 8.3 feet lower than the south edge of the dip. The Butane truck weighed four tons when empty and at the time of the collision contained an uncertain amount of Butane gas. Defendant Hastings was driving west on Broadway, and, upon coming to the intersection of Broadway and 19th Avenue, he slowed down, shifted gears, and turned to the right, or north, on 19th Avenue. He proceeded north on 19th Avenue and, according to his testimony, picked up a speed of thirty to thirty-five miles per hour. Upon reaching the edge of the dip, he observed two cars coming toward him from the north, whereupon he and the two approaching cars dimmed their lights. When he dropped off the edge of the dip, he observed an object, later identified as deceased's truck, which appeared to him like a "shadow." This same shadow or reflection was observed by the drivers of the two cars approaching from the north, Witness Gilbert stating that he saw a reflection in the sky approximately ten seconds before the collision. Witness Phy in his car was following that of Witness Gilbert. He saw a shadow in the dip as he pulled out to go around the car in front of him and then pulled back as the driver of the Butane truck flashed his lights. Both of these cars stopped about 100 feet north of the point of collision, their elevation being 4.4 feet higher than the point of collision. The Butane truck had bright lights which on direct ray gave the driver a vision of 300 to 400 feet, which vision was cut down when the lights were dimmed or deflected downward. Defendant Hastings testified that he did not slacken his speed upon entering the dip and was proceeding at approximately the same speed—thirty to thirty-five miles per hour—up until the time he saw the pickup and trailer, at which time he was just a few feet from it.

There were three witnesses to the accident—Hastings, Phy, and Gilbert. Witnesses Phy and Gilbert confirmed Hastings in

his estimate of the speed he was traveling. Neither Phy nor Gilbert was able to recognize the shadow as that of the Ford pickup and trailer regardless of the fact that as they approached their lights were pointed toward the shadow and shining down the highway. Hastings likewise was approaching the shadow. In other words, the shadow was between their lights and the lights of Hastings. All three witnesses testified that there were no lights on the Ford pickup or trailer, and that it was completely blacked out by the darkness. Hastings testified that upon seeing the trailer he turned to the right (east) and attempted to dodge it; that his left front fender and light struck the right rear corner of the trailer, propelling the Ford and trailer north on the highway a distance of approximately 47 feet, where they ended up in a "jackknifed" position. The body of deceased was found near the front of his truck; tools were scattered along the road as though he had been working on a tire or changing a wheel. The impact severed the hydraulic brake line of the Butane truck leaving it without brakes except for the hand emergency brake. Hastings testified that he made no attempt to use the hand brake but directed all of his energies to steering his truck east of the highway and to keeping it in an upright position. His truck traveled approximately 70 feet before coming to a stop in a big pile of rubbish. Hastings testified that there was no rear tail light burning on the trailer and that he saw no red reflectors. Other witnesses testified that the trailer on the day previous to the accident was equipped with an electric tail light and two red glass reflectors. After the accident the electric tail light was intact but there was no bulb in it. The piece of wood to which the reflectors had been attached was missing and if present at the time of the accident presumably was destroyed by the accident.

The complaint among other things alleges: (1) That defendant Hastings negligently and carelessly drove the truck at a speed greater than was reasonable and prudent, having due regard for the traffic, surface, and width of the highway; (2) that the truck was driven at a speed greater than would permit its driver to exercise proper control and decrease his speed or stop to avoid colliding with the vehicle of deceased; (3) that the truck was driven and operated at a high and excessive rate of speed and in excess of 35 miles per hour; (4) that the driver did not keep any lookout for the vehicle of deceased; (5) that "after observing or after a time when by the exercise of ordinary care he should have discovered the disabled vehicle of the deceased on said highway, the driver of said truck did not exercise any care to avoid running into and against the vehicle of the deceased, or wantonly drove into and against the disabled vehicle of the deceased then on said highway"; (6) that the driver of said truck did not pass, when overtaking the disabled vehicle of the deceased, a safe distance to the left thereof; (7) that the mechanical parts of said truck were at said time and

place in a state of disrepair, and the brakes on said truck were then in an unsafe condition and in disrepair, that said truck was not at said time and place equipped with adequate or any lights in operating condition, and the said truck was then and there being operated without any lights burning or lighted thereon; and (8) that at said time and place the driver of said truck was not then and there in the possession of his faculties and was an incompetent and unsafe driver and operator, all of which was known to defendant Butane Corporation.

The court over objection gave plaintiff's requested Instruction No. 4. This instruction is a rescript of sections 66-101, 66-107, and 66-135, A.C.A.1939, and includes, among other provisions, the following:

"* * * and that no person shall drive at a speed which is greater than will permit the driver to exercise proper control of the vehicle and to decrease speed or stop as may be necessary to avoid colliding with any vehicle upon the highway, *the driver of which is operating such last-named vehicle in compliance with legal requirements* and with the duty of drivers and other persons using the highways to exercise due care; * *" (Emphasis supplied.)

Defendants contend that the giving of this instruction was error for the assigned reason that there was no evidence or testimony to the effect that defendant Hastings was driving at an excessive speed, nor was there any evidence which would in any manner indicate that deceased was operating his vehicle in compliance with legal requirements. It is their position that this instruction was a mere abstract proposition without explanation by the court and without any direction or instruction as to how it might or should be applied to the facts presented. The first part of the instruction states the law of this state relative to the speed of a motor vehicle, the control thereof, and the stopping thereof as may be necessary to avoid colliding with any person, vehicle, or other conveyance upon or entering the highway in compliance with legal requirements, and with the duty of drivers and other persons using the highway to exercise due care; provided that these provisions of the law are not to be construed to relieve the plaintiff in a civil action from the burden of proving negligence on the part of the defendant as the proximate cause of the accident.

Section 66-137, A.C.A.1939, provides that when a motor vehicle is stopped upon a highway during the period from a half hour after sunset to a half hour before sunrise, *and at any other time when there is not sufficient light to render clearly discernible any person on the highway at a distance of two hundred feet ahead,* "* * * there shall be displayed upon such vehicle one (1) or more lamps projecting a white light visible under normal atmospheric conditions from a distance of five hundred (500) feet to the front of such vehicle and projecting a red light visible under like conditions and distance to the

rear, except that no lights need be displayed upon any such vehicle when parked upon a highway where there is sufficient light to reveal it within a distance of two hundred (200) feet upon such highway." It is apparent that plaintiff's intestate had stopped his car on the highway after dark in violation of this section. Under art. 18, sec. 5 of the State Constitution and its many interpretations by this court, the question of whether or not plaintiff was guilty of contributory negligence is a question of both fact and law within the sole determination of the jury. Whether or not defendant Hastings was driving at a speed greater than would permit him to exercise proper control of his truck and to decrease its speed or stop the same to avoid colliding with the vehicle of deceased, considering the width of the highway and the terrain over which he was traveling, was rightfully a question of fact for the consideration of the jury. We do not feel that the quoted portion of this instruction was a mere abstract statement of law. We consider it to be applicable to the fact situation then existing.

Counsel have asked us to review our decisions concerning the interpretation of this section of the Constitution. They have suggested that the constitutional provision is not in all cases and at all times a question of fact for the jury, but is applicable only to cases arising out of the master and servant relationship and not intended to apply in negligence cases gen-

erally. We are not disposed at this time as the court is now constituted to review our decisions in this behalf. This court since the decision in Davis v. Boggs, 1921, 22 Ariz. 497, 199 P. 116, has adhered to the rule that the question of contributory negligence is in all cases a question of fact and law for the determination of the jury. It is not improbable that when the court is augmented by the addition of two associate justices these decisions will be reviewed. See Ch. 135, S.L.1947.

■■ An instruction not based upon the evidence in the case is misleading and calculated to induce the jury to suppose that such a state of facts, in the opinion of the court, is possible and may be considered by them.

"* * * The general principle is that instructions given by the trial court, whether as a part of its general charge or upon special request of counsel, should state the law as applicable to the particular facts in issue in the case at bar, which the evidence in the case tends to prove; mere abstract propositions of law applicable to any case, or mere statements of law in general terms, even though correct, should not be given unless they are made applicable to the issues in the case at bar, * * *" 53 Am.Jur., Trial, sec. 573.

"The scope of an instruction in a particular case, whether civil or criminal, is to be determined not alone by the pleadings therein, but also by the evidence in support of the issues; and even though an issue is

raised by the pleadings, it is not proper to give an instruction thereon where there is no basis for it in the evidence. An instruction not based on the evidence is erroneous in that it introduces before the jury facts not presented thereby, and is well calculated to induce them to suppose that such state of facts in the opinion of the court is possible under the evidence and may be considered by them. * * *" 53 Am.Jur., Trial, sec. 579.

This court has laid down the rule in the case of Southwest Cotton Co. v. Clements, 25 Ariz. 169, 215 P. 156, at page 158, as follows:

"It is a well-known rule that, even though an issue may be raised by the pleadings, it is not proper to give an instruction thereon unless there has been evidence introduced in support of the issue. 14 R.C.L. 786, § 51."

■■ With these rules in mind we will now consider whether or not it was appropriate to give the remainder of the instruction stating the law to be that the driver of every vehicle shall pass a car proceeding in the same direction on the left, and that every vehicle shall be equipped with adequate brakes. Defendants contend that deceased's vehicle was not "proceeding" in the same direction and that due to oncoming traffic and conditions then existing there was obviously no attempt to pass this vehicle as contemplated by the statute. Sec. 66-108, A.C.A.1939. This interpretation we believe untenable. Defend-

ant Hastings did attempt to pass this vehicle and in his judgment chose to go to the right instead of to the left. A vehicle temporarily stopped on the highway does not lose its character as a "proceeding vehicle" merely by the fact that it is not in motion. The rules of the road must of necessity be reasonably interpreted, and a car passing a stationary vehicle should pass on the left thereof after determining that the road is clear and that the passing can be safely made.

■ Although plaintiff alleged that defendant's brakes were defective, there is absolutely no evidence to this effect. The testimony regarding brakes was to the effect that the impact between the two vehicles cut the hydraulic brake line, leaving the truck without brakes except for the emergency brake which was hand operated. Counsel for plaintiff designate this testimony of defendant Hastings to the effect that his brake line had been severed as a "conclusion" and say that the jury had the right to take into consideration all the facts and circumstances surrounding the collision to determine whether or not he had adequate brakes before the accident. This argument is without reason. Defendant Hastings testified to a positive fact; there was no other testimony. There was no evidence fairly tending in any appreciable degree to prove the allegation of the complete lack of brakes. There having been no testimony indicating defective brakes, the reading of this statute to the

jury was misleading and might have induced them to believe that such state of facts in the opinion of the court was possible under the evidence and could be considered by them. We consider the giving of this portion of the instruction to have been prejudicial error. The holding of this court in Seiler v. Whiting, 52 Ariz. 542, 84 P.2d 452, at page 454, is entirely applicable here:

" * * * It is, of course, incumbent upon a plaintiff alleging negligence on the part of a defendant to show affirmatively by evidence sufficient to satisfy a reasonable man that the negligence complained of actually existed. *It is not sufficient that the facts are such that it might have existed. It must appear affirmatively that it did.* * * * " (Emphasis supplied.)

Defendants have also assigned as error the giving of plaintiff's requested Instruction No. 10, which permitted the jury to return a verdict for plaintiff if it believed from a preponderance of the evidence that defendant Hastings was operating the truck of the Butane Corporation in one or more of the *negligent manners alleged in the complaint.* The complaint charged that defendants' truck had no lights; all of the evidence was to the contrary. There was no evidence from which it might be reasonably inferred that defendants' truck was being operated without any lights.

The complaint also alleged that defendant truck driver "was not then and there in the possession of his faculties and was an incompetent and unsafe driver and operator, all of which was known to the defendant, * * *." No proof was offered to prove this allegation as to incompetency other than such as might be inferred from the circumstances surrounding the accident. Absolutely no proof was offered that knowledge of the alleged incompetency had ever been called to the attention of defendant corporation. This instruction permitting the jury to consider all the various allegations of negligence set forth in plaintiff's complaint (want of lights and alleged incompetency of driver brought home to defendant corporation), notwithstanding the fact that there was no evidence in support of these allegations, was error as we pointed out above with reference to the instruction relative to lack of brakes when there had been no testimony indicating lack of brakes.

The court in a negligence action in charging the jury must limit its instructions to the facts in issue as supported by the proof introduced at the trial or admitted upon the pleadings. To instruct upon the pleadings as if pertinent evidence had been offered in substantiation thereof, but where in truth and fact no pertinent evidence has been offered, can tend only to confuse the issues and mislead the jury. Under our new rules a cause of action in negligence can be briefly and simply stated. Kauffroath v. Wilbur, 66 Ariz. 152, 185 P.2d 522, decided Oct. 14, 1947. Whether or not a cause of action is established depends upon

the proof offered. It is taking an undue advantage to substitute allegations for proof and for the court to instruct the jury on the assumption that pertinent evidence has been offered to substantiate the allegations.

Defendants also assign as error the giving of the following two instructions:

"Instruction No. 8. If you find from the evidence that the truck of defendant, Butane Corporation, was driven by defendant P. T. Hastings on the highway at the place of the collision at a speed greater than was reasonable and prudent, having due regard to the traffic, surface and width of said highway, and the conditions then and there at said place existing, *or* that said motor truck of defendant, Butane Corporation, driven by the defendant, P. T. Hastings, was driven and operated at a speed greater than would permit P. T. Hastings to exercise proper control of said truck and to decrease its speed or stop the same within the range of his vision to avoid colliding with the vehicle of the deceased, then on the highway, then I charge you that such acts constitutes negligence per se. Negligence per se simply means that the violation of the statute is in and of itself negligence. Before the plaintiff may recover, however, this negligence must be the proximate cause of his injury and death." (Emphasis supplied.)

"Instruction No. 11. You are instructed that it is not enough that a driver of a motor vehicle on the public highways of Arizona be able to begin to stop within the range of his vision, nor is it enough that he use due diligence to stop after discerning an object on the highway. The established rule of law makes no allowance for delay in action. The driver must, on peril of legal negligence, so drive that he can and will discover an object, perform the manual acts necessary to stop, and bring the car he is driving to a complete stop within the range of his vision."

It will be noted that Instruction No. 8 is in the alternative. It is to the effect that if a driver drives his vehicle at a speed greater than is reasonable and prudent, having due regard for the traffic, surface, and width of the highway and the conditions then and there existing, *or* drives his car at a greater speed than would enable him to stop within the range of his vision and by reason thereof collides with another vehicle, such acts constitute negligence per se. The first part of Instruction No. 8 is clearly erroneous. It has never been the law in this jurisdiction that one is guilty of negligence per se merely because he operated his vehicle at a speed greater than was reasonable and prudent, having due regard to the traffic, surface, and width of the highway and any other conditions then existing. This instruction is a rescript of a portion of section 66-101, supra. Following this general declaration as to the care to be used in operating an automobile, the section continues with specific speed limitations with reference to schools, grade cros-

sings, business districts, and residential districts. We have held that a violation of these specific speed limitations is not negligence per se. McIver v. Allen, 33 Ariz. 28, 262 P. 5; Alabam Freight Lines v. Phoenix Bakery, 64 Ariz. 101, 166 P.2d 816, at 823, decided Feb. 25, 1946. If it is not negligence per se to violate these specific speed limitations a fortiori a violation of the general provisions of the section directing that a car not be operated at a speed greater than is reasonably prudent would not be negligence per se.

The last part of this instruction and Instruction No. 11 correctly state the law as it had been interpreted by this court at the time this case was tried. Up until our decision in the Alabam Freight case, supra, a driver was guilty of negligence as a matter of law if he so operated his vehicle that he could not stop within the range of his vision. Counsel for plaintiff construe the holding in the Alabam Freight case to be an exception to the rule requiring a driver to stop within the range of his vision as laid down in Dennis v. Stukey, 37 Ariz. 299, 294 P. 276; Coe v. Hough, 42 Ariz. 293, 25 P.2d 547 and Campbell v. English, 56 Ariz. 549, 110 P.2d 219, because of the peculiar facts presented in the Alabam Freight case. In that case we pointed out that this court in Coe v. Hough, supra, recognized the justice of the holding in the Washington case of Morehouse v. City of Everett, 141 Wash. 399, 252 P. 157, 58 A.L.R. 1482, but construed the holding therein as an exception to the absolute rule requiring one to stop within the radius of his vision, rather than a rejection thereof. We intended in the Alabam case to reject the definite and absolute rule first announced in this jurisdiction in Dennis v. Stukey, supra. In the Alabam case we were confronted with a situation where to apply the law in all of its implications would have resulted in a gross injustice requiring us, if adhered to, to create another exception. Section 66-101, supra, was first enacted as subchapter 5 of chapter 2, § 1, Laws 1927, 4th S.S., and required that a vehicle be driven "at a careful and prudent speed not greater than is reasonable and proper, * * *." The section did not contain a provision directing the driver to be able to stop within the range of his vision. In interpreting this section this court construed it to require a driver to be able to stop within the range of the vision of his lights. Counsel for plaintiff in their brief say that this rule is statutory. We are not able to find that the rule was ever statutory. In the Alabam case we said [64 Ariz. 101, 166 P. 2d 823]:

" * * * The absolute rule of 'drive within the radius of your lights' is supposed to have been first announced in Lauson v. Town of Fond du Lac, 141 Wis. 57, 123 N.W. 629, 25 L.R.A.,N.S., 40, 135 Am. St.Rep. 30. The supreme court of Washington in Morehouse v. City of Everett, 141 Wash. 399, 252 P. 157, 160, 58 A.L.R.

1482, examined the doctrine as set forth in the Wisconsin case, supra. Its observation is as follows: 'We seriously doubt whether this case, which is the leading one, supports the rule contended for. If this opinion means that one driving an automobile at night must, under all circumstances, see any object in the road in front of him which comes within the radius of his lights, and be able, under all circumstances, to stop his car before striking the object, then we are unable to agree with it. On the contrary, if it holds that he must see any object which an ordinarily prudent driver under like circumstances would have seen, then we think it states the law correctly.' "

We did not there say specifically that we approved of the reasoning in the Morehouse case, but the only reasonable implication is that we intended to approve of it. We further said:

" * * * We believe the just test to be: What would an ordinarily prudent person have done under the circumstances as they then appeared to exist? * * * "

■ We now hold that the driver of an automobile at night is not required under all circumstances to see any object in the road in front of him which comes within the radius of his lights and be able under all circumstances to stop his car before striking the object. The driver of an automobile at night is guilty of negligence if he collides with an object which he has failed to see and which an ordinarily prudent driver under like circumstances would have seen. To hold that defendant Hastings was guilty of negligence as a matter of law for failure to see the Ford truck and trailer parked without lights would nullify the statutes requiring lights on automobiles parked on the paved surface of a highway after dark. He was guilty of negligence only in the event that a reasonably prudent person would have observed the truck and trailer regardless of the fact that it was without lights. The giving of the two instructions under consideration was prejudicial error.

■ Defendants assign as error the giving of the following instruction which permitted the jury to disregard defendants' plea of contributory negligence in the event it found defendant Hastings to have been guilty of conduct in reckless disregard of the safety of another, often referred to as "wanton or wilful misconduct." The instruction reads as follows:

"On this question of contributory negligence, I instruct you, ladies and gentlemen, that if you find that the defendants were negligent and that such negligence was the proximate cause of the collision, injuries to and death of Frank Wolford, and if you further find from a preponderance of the evidence that said negligence on the part of the defendants was wanton, then you are instructed that the defendants cannot avail themselves of the defense of con-

tributory negligence and in that event the plaintiff would be entitled to recover.

"The word 'wanton' as used in this instruction indicates a reckless disregard of the rights of others or a reckless indifference to results. By 'a reckless disregard of the rights of others or a reckless indifference to results,' as those words are used in this instruction, is meant the intentional doing of an act or failure to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other, but also involves a high degree of probability that substantial harm will result to him."

This instruction correctly states the law and is applicable where the facts proved or reasonably inferable therefrom justify it, and is clearly within the definitions set forth in Womack v. Preach, 63 Ariz. 390, 163 P.2d 280, and the Alabam Freight Lines case, supra. It is the position of defendants that the jury could have made no other finding than that deceased was guilty of contributory negligence in parking his truck and trailer on the east half of the highway without lights, and that it was relieved of so finding by the instruction authorizing it to disregard the evidence of contributory negligence if it found that defendant Hastings was guilty of conduct in reckless disregard of the safety of de- ·

ceased. They also insist that there was no evidence of intentional wrong or indicating a reckless disregard of the rights of others. Plaintiff meets this contention by pointing out that the instruction was justified in view of the fact that the truck and trailer were pushed down the road a distance of 47 feet and that defendants' truck proceeded a distance of 70 feet over a rough sandy terrain after the collision. Plaintiff insists that the jury was justified in finding from these facts that defendant Hastings must have been traveling at a speed greatly in excess of 35 miles per hour, and was guilty of reckless misconduct. With this assumption we are not in accord. We are not unaware of the rule precluding this court from weighing the testimony. There was nothing extraordinary in the fact that this Model A Ford pickup and small trailer were propelled down the smooth paved surface of the highway a distance of 47 feet. Nor is there anything extraordinary or unusual in the fact that a 4-ton truck traveling 35 miles per hour, without brakes due to the severing of the hydraulic brake line, stopped 70 feet from the point of impact. Plaintiff in support of his position has recourse to the following rule as quoted from 53 Am.Jur., Trial, sec. 580:

"In determining whether there is evidence that will warrant an instruction, the court does not pass on the weight and sufficiency of the evidence. It is not error to submit an instruction covering a theory advanced by a party if there is any evidence

on which to base it, although it may be slight and inconclusive, or opposed to the preponderance of the evidence. * * *"

The cases cited by this text in support of this declaration of the rule are all old cases. We do not consider this test a correct statement of the law that should be applicable. Slight and inconclusive evidence borders on the realm of conjecture. A defendant should not be held guilty of reckless misconduct unless there is evidence, or justifiable inferences therefrom, reasonably tending to establish such reckless misconduct. Azzaro v. O'Connell, 121 Cal.App. 617, 9 P.2d 345. In Collins v. Jones, 131 Cal. App. 747, 22 P.2d 39, it was held that instruction should be based on evidence actually adduced or on reasonable inferences from evidence disclosed from the record. To the same effect are Farmers' Union Coop. Gin Co. v. Fairbanks, Morse & Co., 181 Okl. 336, 73 P.2d 1148, and Chicago, R. I. & P. Ry. Co. v. Richerson, 185 Okl. 560, 94 P.2d 934. Plaintiff argues that not only was defendant proceeding at a high and reckless rate of speed and without brakes as above indicated, but he also insists that he drove the last 480 feet at a time when he could not see the roadway. To support this contention plaintiff has recourse to the following testimony of Hastings who testified that as he proceeded north from Broadway with his bright lights burning he could see an object in the highway 300 or 400 feet distant, but that he could not see into the dip until he was practically in it. On cross examination he testified as follows:

"Q. Let us confine ourselves to this highway. Did there come a time as you proceeded north on Nineteenth Avenue that you couldn't see the highway ahead of you? A. It did.

"Q. Where were you with reference to the beginning of that dip when you couldn't see the highway ahead of you? A. From the time I left Broadway until I went into it.

"Q. I think you have said something you don't mean. Up to where the dip started you could see three or four hundred feet. A. Yes.

"Q. Where were you when you couldn't see the highway ahead of you? A. When I approached the dip.

"Q. How far south of the commencement of the dip? A. I don't know.

"Q. You have just now told me you reached a place as you came north where, by reason of a dip in the road, you couldn't see the roadway. A. Yes.

"Q. Now, how far ahead of your own truck could you always see? A. The road?

"Q. Yes. A. You cannot see it now in daylight.

"Mr. Stockton: I move to strike the answer.

"The Court: It may be stricken. Take your time and attempt to answer his ques-

tions. A. I wouldn't know. My lights would shine on the level three or four hundred feet, but as to the exact distance from the dip when I couldn't see it I wouldn't know.

"Mr. Stockton: Did there come a time as you drove north on that road that night where you couldn't see any distance at all ahead of you on that road? A. Yes, sir.

"Q. How far after that condition prevailed did you drive when you couldn't see any of the roadway ahead of you? A. I couldn't answer that exactly.

"Q. Let me ask you this, was it from the time you approached the dip until you got within a very few feet of this vehicle you ran into? A. Yes, sir."

Counsel for plaintiff, as disclosed by the foregoing questions and answers, realized that witness was confused and had said something that he did not mean. On redirect examination counsel for defendant attempted to clear this up, stating that he thought witness was confused, and asked a leading question to which the answer was stricken. Counsel then asked this question and received this answer:

"Mr. Trask: Mr. Hastings, will you state whether or not there was any time prior to the collision that there came a time that you couldn't see anything at all ahead of you. A. There wasn't."

Defendant Hastings and the two disinterested witnesses all testified that his lights were on at all times. For some few seconds prior to the accident the truck lights were on "dim". At the time he entered the dip he was at an elevation 4.3 feet higher than the Ford pickup 480 feet distant; when he was 280 feet from the Ford pickup he was at an elevation 3.6 feet higher; when he was a distance of 230 feet from the Ford pickup the elevation of the road upon which he was driving was 1.7 feet higher than the roadway upon which the Ford pickup was parked. Hastings testified that his lights showed down the road the normal distance when driving on dim. There was no estimate made as to how many feet they would show down the road when adjusted on dim. All of the reasonable testimony and the physical facts are to the effect that for at least 230 feet defendant Hastings was to all intents and purposes proceeding on level ground. The roadway was certainly visible to him. In this respect the physical facts are conclusive. Whether or not he saw or should have seen the Ford pickup was a question of fact for the jury.

Physical facts often speak louder than words and are more persuasive and demonstrative than oral testimony, but these physical factors do not demonstrate that the speed of the truck was in excess of 35 miles per hour. Nor do they physically demonstrate the inaccuracy of the oral testimony of the witnesses as to speed. It cannot reasonably be inferred from

these facts alone or taken in consideration with all the facts and circumstances that the truck driver's conduct showed a reckless disregard for the security of others. His conduct " * * * must not only involve a high degree of probability that death or serious bodily harm will result therefrom, but the circumstances must be such that the risk so created is unreasonable. * * *"

" * * * Although conduct to be reckless must be negligent in that it is unreasonable, it must be something more than negligent. It must not only be unreasonable, but it must contain a risk of harm to others in excess of that necessary to make the conduct unreasonable and therefore, negligent. It must involve an easily perceptible danger of substantial bodily harm or death and the chance that it will so result must be great." Restatement, Torts, sec. 500, Comment a.

We conclude that the evidence does not disclose that defendant's conduct was tainted with that degree of recklessness to justify the label of "wanton misconduct" or "wanton negligence." We pointed out in Barry v. Southern Pacific Co., 64 Ariz. 116, 166 P.2d 825, 828, decided March 4, 1946, that a plaintiff cannot avoid the consequences of being guilty of contributory negligence merely by the artifice of pleading wilful or wanton negligence. We repeat what we there said—"It is the facts and not the pleadings that are conclusive."

The giving of the instruction permitting the jury to disregard defendants' plea of contributory negligence in the event defendants were found to have been guilty of wanton misconduct constituted prejudicial error. Defendant Hastings was at most guilty of simple negligence.

Defendants have also assigned as error statements made by counsel for plaintiff in arguing before the jury which they assert implied that defendants carried insurance against liability. The statement complained of reads—"there is not a business which doesn't provide for the expenses of accidents." The entire argument made by counsel was not transcribed. Objection was made by counsel for defendants to this statement in a motion for mistrial which was denied. In making the objection counsel for defendant purported to repeat what counsel had said. The record does not show that counsel for plaintiff denied making the statement and apparently he was correctly quoted. We do not know what prompted the statement as it does not appear in its full context. So much as appears is certainly susceptible of being interpreted to mean that defendants were covered by insurance, or in any event would not suffer financially by a verdict against them. Counsel would do well to adhere to the ruling of this court in Blue Bar Taxicab & Transfer Co. v. Hudspeth, 25 Ariz. 287, 216 P. 246. Good judgment would suggest that a possible

verdict should not be endangered by over-reaching.

For the foregoing reasons the judgment is reversed and the cause remanded for a new trial.

STANFORD, C. J. and UDALL, J., concur.