467 P.2d 752

**Ygnacio L. MORALES, father of Vicente Morales, deceased, Appellant,**

v.

**Herbert Clark BENCIC, Appellee.**

**No. I CA–CIV 1056.**

Court of Appeals of Arizona,
Division 1,
Department B.

April 13, 1970.

Rehearing Denied May 8, 1970.

Review Denied May 26, 1970.

Estrada, Estrada & Ross, by Lionel Estrada, Phoenix, for appellant.

Renaud, Cook, Miller & Cordova, by Val A. Cordova, Phoenix, for appellee.

HAIRE, Judge.

Plaintiff (appellant herein) sued defendant (appellee herein) for the wrongful death of his three year old son, Vincente. From judgment entered upon a jury verdict in defendant's favor, plaintiff appeals.

The accident occurred at about 4:30 p.m. on February 3, 1967, on Montezuma Avenue north of the intersection of Montezuma (a north-south street) and Alta Vista (an east-west street) in Phoenix. Plaintiff and his family lived on the west side of the street. There were no cars parked on that side of the street but there was a pickup truck parked on the east side of the street facing south. That vehicle belonged to the decedent boy's aunt who lived on the east side of the street directly across from plaintiff's and decedent's house on the west side of the street.

Earlier that day, the defendant returned from work (some time between noon and 1:00 p.m.) and had lunch. Defendant drank a beer with his lunch and had a second beer one-half hour or an hour later. At approximately 3:45 p.m. defendant took his four children and proceeded to drive in the family's pickup truck to his brother-in-law's home.

Defendant was driving north on Montezuma and approached the intersection of Montezuma and Alta Vista where—though there was no stop sign facing him—he stopped and, after making certain that vehicles on Alta Vista stopped (there were stop signs for traffic on Alta Vista), proceeded north. Plaintiff's son had been

playing at his aunt's house on the east side of the street and began to walk west towards his home on the other side of the street. The boy crossed the street from behind (i.e., north of) the truck parked on the east side of the street and after emerging from behind that vehicle, plaintiff's son was struck by defendant's vehicle as it traveled north on Montezuma. Defendant stopped his vehicle and attempted in vain to render aid to the mortally injured child.

Police officers arrived shortly thereafter to investigate the incident. There were also eyewitnesses to the accident. Their testimony at trial indicated that defendant was driving—depending upon which witness' testimony the jury believed—anywhere from less than 25 miles per hour to 40 or 45 miles per hour. A 14 year old eyewitness stated that defendant appeared to be watching his children while driving and was preparing to hit one of them just prior to the accident. There was further testimony that defendant neither sounded his horn nor applied his brakes before the time of impact. Defendant testified that he did not see the decedent before impact and that it was only after hearing a "thud" that defendant looked back and saw the boy's body lying in the street. The decedent's aunt testified that defendant could not have seen decedent as he walked behind the parked vehicle.

A jury verdict was returned in defendant's favor and judgment was entered thereon. Plaintiff's appeal rests on three separate though largely interrelated grounds all dealing with the question of whether or not defendant was intoxicated at the time of the accident.

■ Plaintiff first contends that the trial court improperly admitted, over plaintiff's timely objection, testimony by two Phoenix police officers—based upon their personal observation of defendant—that defendant was not intoxicated at the time they interrogated him at the scene of the accident. Vernon Wingfield, a police officer with 13 years' experience and Albert R. Lohbeck, an officer for 5 years, each

testified—in response to foundational questions—that during their law enforcement careers they had frequently observed people in varying states of intoxication. Both subsequently stated that there was no odor of alcohol about the defendant, he was not unsteady on his feet nor were his eyes bloodshot. Both officers, over objection, testified to their belief that defendant showed no indication whatsoever of being under the influence of alcohol.

The testimony was properly admitted. In Esquivel v. Nancarrow, 104 Ariz. 209, 213, 450 P.2d 399, 403 (1969), our Supreme Court said that " * * * *lay* witnesses [with] sufficient opportunity to observe a person may testify as to whether that person appears to be intoxicated." (Emphasis added). *A fortiori*, these police officers of 5 and 13 years' experience who have frequently observed persons in varying states of intoxication may properly testify whether, based upon their own observation, a person shows any indication of being under the influence of alcohol. See also, M. Udall, Arizona Law of Evidence § 22 at 39 (1960).

■ Plaintiff's second contention is that the trial court violated the constitutional interdiction against judicial comment on the evidence. The Arizona Constitution provides that "[j]udges shall not charge juries with respect to matters of fact, *nor comment thereon*, but shall declare the law." Ariz. Const. art. 6, § 27, A.R.S. (Emphasis added).

The trial court's alleged "comment" occurred during the closing argument made by plaintiff's counsel (Mr. Estrada). The context of the "comment" (see Patania v. Silverstone, 3 Ariz. App. 424, 429, 415 P.2d 139 (1966)) is best shown by including a fairly substantial amount of the argument leading up to it:

[Mr. Estrada]:

"That child could be alive today and just because a child is in the street you have no right to kill a child. You can't just say, 'Well, he's in the street I'm

going to run over him because that's the law.' He is—

"MR. CORDOVA: If the Court please, I hesitate to object, but there is no allegation of willful, wanton, in this respect it's in [sic] improper.

"THE COURT: Correct, there has been no such allegation, therefore argument in this area would be improper.

"MR. ESTRADA: In conclusion, I'd like to read to you the statement—I think, out of the deposition of Mr. Bencic—no, no, I have read it.

"No, excuse me, I didn't. I read this to you before. This is it, I'll stop right after this.

"This is a question being directed to Officer Lohbeck:

'Question: Did you ask him why he did not apply the brakes after impact?

'Answer: Yes, he said he just became confused and didn't think and just let the truck coast to a stop.'

"is that the reasonable prudent man exercising proper care, or maybe the beer was just too much for him to handle and may be it was more than two beers.

"MR. CORDOVA: If the Court please, once again I must object about the last comment and ask that it be stricken, your Honor.

"MR. ESTRADA: Thank you very much, I will now rest.

"MR. CORDOVA: There is no evidence, your Honor, may I have the Court's ruling on that?

"THE COURT: Yes, the remark may be stricken, since *there is no evidence of being under the influence.*" (Emphasis added).

We note at the outset that prior to jury argument the trial court had advised counsel that, as it had found no evidence on the issue of intoxication, it would not submit that issue to the jury nor give any instructions thereon. We strongly disapprove the attempt of plaintiff's counsel in his closing argument to subvert the trial court's ruling. *Cf.* Zelman v. Stauder, 11 Ariz.App. 547, 466 P.2d 766 (filed 23 March 1970).

Dealing with the merits of plaintiff's claim, we find it lacking in substance. As the quoted material indicates, the trial court was merely stating its reason for striking counsel's improper remarks. Such is not the conduct prohibited by the constitutional provision. *Cf.* State v. Owen, 94 Ariz. 404, 385 P.2d 700 (1963), vacated sub nom. on other grounds, Owen v. Arizona, 378 U.S. 574, 84 S.Ct. 1932, 12 L.Ed.2d 1041 (1964); Vegodsky v. City of Tucson, 1 Ariz.App. 102, 399 P.2d 723 (1965); M. Udall, Arizona Law of Evidence § 3 at 7–8 (1960).

Plaintiff's final contention herein is that the trial court erred by refusing to instruct the jury that driving under the influence of alcohol is negligence *per se* since, in plaintiff's opinion, there was sufficient evidence to justify such an instruction. We have examined the entire record as it relates to this contention and find that the trial court's ruling was proper.

The evidence relating to defendant's alleged intoxication consisted of the statements of officers Wingfield and Lohbeck—plaintiff's own witnesses—who, as stated earlier in this opinion, said that defendant showed none of the indicia of intoxication. Another of plaintiff's witnesses—the deceased boy's aunt—testified that from all her observations of defendant at the scene of the accident, defendant's conduct appeared to be normal. Defendant's own testimony was that he had a beer with his lunch at some time between 12:00 noon and 1:00 p.m. on the day of the accident and subsequently had a second beer by about 2:00 p.m. The accident occurred at approximately 4:30 p.m. that afternoon. It was defendant's testimony that his abilities were not in any way impaired by the beer at the time of the accident.

As the foregoing indicates, there was no evidence that defendant was intoxicated at the time of the accident; therefore an in-

struction dealing with driving while intoxicated would have been erroneous. Esquivel v. Nancarrow, *supra*; Eldredge v. Miller, 78 Ariz. 140, 277 P.2d 239 (1955); Butane Corp. v. Korby, 66 Ariz. 272, 187 P.2d 325 (1947). Thus, the trial court properly refused to give that instruction.

The judgment of the trial court is affirmed.

EUBANK, P. J., and JACOBSON, J., concur.